## Case No. 8,990.

### In re MALLORY.

[4 N. B. R. 153 (Quarto, 38).] [1]

District Court, D. Nevada. 1870.

BANKRUPTCY — ASSIGNEE — MISMANAGEMENT — FRAUDS—MOTION TO REMOVE—GOOD FAITH—COSTS.

Where an assignee, who is clerk of the bankrupt's attorney, is charged with mismanagement of the estate, and that he sold the property for less than its value, and had been guilty of gross frauds, and his removal is asked by the creditors who are unwilling to intrust the exposition of those frauds to such assignee, and a committee is named to conduct the proceedings on the part of the creditors, *held*, it is expedient that there should be another assignee substituted for the present one. At the same time such order will be made as to fully protect the present assignee against the cost of this proceeding, for it appears from the testimony that he has acted throughout with entire good faith and energy. The costs of this proceeding must be paid out of the estate.

[Cited in Re Blodget, Case No. 1,552; Catlin v. Hoffman, Id. 2,521; Citizens' Bank v. Ober, Id. 2,731; Re Wetmore, Id. 17,466.]

In bankruptcy.

HILLYER, District Judge. The petition charges that the assignee has mismanaged the estate; that by connivance with others he has sold property for less than its value; that he has failed to make reasonable efforts to recover the property of the estate; that the present assignee is the confidential clerk of the attorney of the bankrupt; that he favors the bankrupt and his attorney; and that the bankrupt has been guilty of gross frauds, and the creditors petitioning are unwilling to intrust the exposition of those frauds to the present assignee. The petition is signed by three creditors, who, it is alleged, are a committee representing a majority in number and value of the creditors. The answer of the assignee denies specifically all the allegations of the petition except that he is clerk of the bankrupt's attorney. All the charges of fraud on the part of the assignee; or connivance with the bankrupt in the concealment of property, have been most successfully met, and were, as a ground for removal, abandoned on the argument.

Something was alleged in the pleading, and more was said on the argument, imputing unprofessional conduct and bad motives to the counsel for the assignee on one side and of the creditors on the other. I can see no shadow of foundation for this on either side, and I regret that either should have felt it necessary to vindicate his conduct in the proceeding by language so bitter and personal as was employed. The character and ability of both gentlemen are too well established to require any vindication from this court,

---

[1] [Reprinted by permission.]

and in the conclusion to which I have come, I have laid aside all consideration of these charges, which are entirely unsupported by proof sufficient to found a suspicion upon. There has been more said about fraud in this matter and less proved than in any case I have ever heard.

I shall proceed to decide only such questions as seem to be properly involved in the case. It is admitted by the assignee that he solicited from creditors his appointment; that he has done so in other cases, and makes it in some sort a business to procure his election as assignee in bankruptcy. He claims that it is right and proper to do so. The fact of such solicitation has been held to be good ground upon which to withhold the judge's approval of an assignee's election. The creditors should be left free and unbiased in their choice. Such is the policy of the bankrupt act [of 1867 (14 Stat. 57)]. It might lead to abuses if assignees were permitted to do this. In re Doe [Case No. 3,-957]. Whether there has been such an influence exercised by the assignee or not, as to invalidate his election, must be left to depend upon the circumstances of each case. There might be some solicitation on the part of the assignee which would in no way influence the choice of the creditors. The creditors having knowledge of the action of the assignee in soliciting his own election, and permitting him to qualify and act for six months, as in this case, without objection, it is too late to ask his removal on that ground alone. Some little evidence was given tending to show that one of the attorneys of the bankrupt interested himself in procuring the election of this assignee, and voted by proxy a large portion of the votes given for him. Neither the bankrupt nor his solicitors can be permitted to make the proceedings in bankruptcy his proceedings. Ex parte Arrowsmith, 14 Ves. 209.

It is clearly wrong to allow the bankrupt to select his assignee. Such an assignee might favor the bankrupt at the expense of the creditors' interests. In re Bliss [Case No. 1,543]; Eden, Bankr. Law, 221. That the assignee is the confidential clerk of the bankrupt's attorney might be a good reason for withholding the approval of the choice, if objections were made by the creditors before approval, but such objection should be made, if the facts are known to the creditors, immediately after election; and if, with full knowledge of the facts, the assignee is allowed to go on and exercise his duties, something more ought to be shown—some misconduct, or that the relation existing is in some way prejudicial to the rights or interests of the creditors. A relative of the bankrupt has been rejected, in Re Powell [Case No. 11,-354], and the reason for disapproving the creditors' choice in that case seems to apply with some force to the clerk of the bankrupt's attorney. But there is no restriction upon the choice of the creditors, in the bankrupt law, except that the assignee shall not be a creditor who has received a preference, and if creditors, without any undue influence, and with knowledge of the facts, choose such an assignee and the judge approves without objection, it is too late to object. The creditors argue that the assignee should have recovered for the benefit of the estate certain property which lawfully belongs thereto. On the eve of bankruptcy the bankrupt mortgaged to the attorney employed to prepare his petition and schedule, a six-mule team as security for a fee of one thousand dollars for such services. The team was afterward sold by the assignee, subject to the mortgage, and not bringing one thousand dollars, the proceeds of the sale were paid to the attorneys of the bankrupt. No question is made as to the good faith of the assignee in this matter. He has done what he thought to be right—if he has erred. This court does not deem it necessary or proper to decide upon the validity of this mortgage in this proceeding. When it is decided, the parties interested in upholding the mortgage will be heard. Judge Duval, in Re Evans [Id. 4,-552], held that such a mortgage was clearly invalid, and that the attorneys must prove their debt with other unsecured creditors, but, from the opinion, the point does not seem to have been much discussed, the real question determined appearing to be whether, under the 30th section, the attorneys would even be allowed to prove their debt.

Evidence was introduced in regard to a team transferred to one Hagerman a short time before the filing of the petition in bankruptcy. It seems to be manifestly improper to decide now that this was or was not a valid transfer under the bankrupt law. Mr. Hagerman, the party interested, has not been heard, and this court may be called upon to decide the question upon a fuller hearing, and more complete evidence. The assignee went so far as to ascertain that Mallory was justly indebted to Hagerman, in an amount equal to the value of the team, and there rested. This might all be; and there might be an entire absence of anything like actual fraud, and yet the assignee be entitled to the property as trustee of the creditors, if the transaction came within the provisions of section 35. But the assignee must be allowed some discretion, and if he believe the expense of a suit to recover property will be greater than the benefit to be derived from the suit, if successful, he ought not to proceed. The assignee, in this case, has employed the attorney of the bankrupt as his attorney in some of the proceedings, and the propriety of doing this has been discussed. So far as my research has gone, the courts uniformly disapprove of the same person acting as attorney for the bankrupt and the assignee, not because the duties always are conflicting and adverse, but because they

may be so. The assignee's attorney is a minister of the court, and his duty is to attend to the estate, even to the prejudice of his own claims; and it is considered inconsistent with his duties if he act also as attorney for the bankrupt. Eldon, Bankr. Law, 214. Lord Eldon once said: "It is astonishing that solicitors of great name will engage themselves as solicitors for assignees, the creditors, and the bankrupts also." Ex parte Arrowsmith, 14 Ves. 209. Again he says: "This case is an instance of the mischief arising from the practice of the assignees and the bankrupt acting by the same solicitor. The adverse duties resulting from those conflicting. characters cannot be properly sustained by the same person." Ex parte Vaughan, Id. 514.

It was said on the argument that no attorney of respectability would ever aid the bankrupt in concealing a fraud. Every lawyer knows how, almost unconsciously, he identifies his client with himself, and it is not necessary to assert that he would cover up a fraud knowingly; but he would be less apt than the opposing party to believe that his client had done a wrong. Besides, while an attorney would be as culpable as his client, or worse. if he assisted him in the perpetration of a fraud, still this is a very different thing from defending the client for acts past. Every one has a right to make such defense. and to have the aid of counsel. And to my mind the conduct of the attorney would be as praiseworthy in the latter case as unjustifiable in the former.

A document was introduced in evidence, signed by a majority in number and value of the creditors, as claimed by the petitioners, which is an agreement of the creditors with each other to give twenty per cent. of their dividends for the purpose of opposing the bankrupt's discharge, and recovering property asserted by them to have been fraudulently disposed of by the bankrupt. The assignee denies that this document is signed by a majority in number or value of the creditors. A committee of three is also named in the agreement to conduct the proceedings on the part of the creditors. Rosebury, who procured the signatures, says, that he told those who signed that the first step would be an application for the removal of the present assignee, and it appears that at a meeting of these creditors, it was also resolved to petition for the assignee's removal. Section 18 of the bankrupt act gives the court power to remove an assignee for any cause which, in its judgment, renders such removal necessary or expedient. The removal of the assignee is a matter left to the discretion of the court.

In my judgment, it is expedient that there should be another assignee substituted for the present one. At the same time such order will be made as to fully protect the present assignee against the cost of this proceeding, for it appears from the testimony,

that he has acted throughout with entire good faith and energy. But there is, unfortunately, an irreconcilable disagreement between the present assignee and a large portion of the creditors. whose interests and wishes the court is bound to regard while protecting the assignee from any injustice. The assignee is a trustee of each and every creditor. He receives a compensation for his services, and is held to strict diligence in watching the interest of creditors. The creditors are the beneficiaries, and have a direct pecuniary interest in the bankruptcy proceedings. Courts of equity sometimes decree a substitution of trustees where there has been no fault on the part of the trustee. Substitution has been made where the trustees would not act together. Here are some of the points of difference between the petitioning creditors and the present assignee: The assignee believes that Mallory has acted honestly—the creditors that he has been guilty of fraud. The assignee is satisfied that Hagerman is entitled to keep the team—the creditors that it belongs to the estate. The assignee considers the mortgage to bankrupt's attorney valid— the creditors desire to test the question. The creditors think there is property which can be recovered to the estate. in Owen's Valley —the assignee thinks not. Creditors think the bankrupt drew a large amount of money from the bank in January, 1870, and paid to John James, and that this was a fraudulent preference—the assignee is of a contrary opinion. The assignee says that he should employ the attorney of the bankrupt as his legal adviser, and the creditors desire some other attorney. The assignee would change his attorney if directed to do so by the court. The assignee is sincere in his opinions, and an equal sincerity must be accorded to the creditors.

It was said on the argument, that the assignee would proceed in any manner directed by the court. But it would seem to be manifestly wrong for the court to constitute itself the legal adviser of the assignee. He has a right to choose his own counsel, and must proceed with his duties according to his best judgment, the court holding him to no more than a just and reasonable accountability. Should the court undertake to direct him when to proceed in a suit, it would find that it had practically decided questions ex parte which ought to have been decided only on a hearing of both parties interested. Upon the questions of cost, I shall allow the assignee to tax his costs against the estate; that is, the cost of this proceeding must be paid out of the estate. Had it not been for the charge of fraud made against the assignee by the creditors, a charge wholly unfounded and abandoned on the argument, the expense of this proceeding would have been comparatively light. But an assignee could not rest under such a charge. feeling himself innocent, and was fully justified in bringing all the witnesses necessary to rebut the charge and

vindicate himself. It is just that the estate should bear these costs.

Upon the whole case it is ordered, that the said R. V. Dey be removed from the trust of the assignee of the estate of said bankrupt, and that the costs of the proceedings for removal be paid out of the estate of said bankrupt subject to prior charges.

[NOTE. The case was subsequently heard upon petition of Henry Vansickle, a judgment creditor of the bankrupt, praying that an injunction, granted upon petition of the bankrupt against the sheriff of Douglas county, who had levied upon property of bankrupt to satisfy execution in favor of Vansickle, the sale of which property was thereby enjoined, be dissolved. The petition was dismissed. Case No. 8,991.]